UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN LEE CRANMER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-900-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is denied and defendant's motion is granted.

I.  BACKGROUND

On March 3, 2008, plaintiff filed an application for SSI. Administrative Record ("AR") 113-119. Plaintiff previously received SSI under Title XVI of the Act as a disabled child based on a finding that he was disabled since March 31, 2003. *Id*. at 19, 213. As required by section 1614(a)(3)(H) of the Act, plaintiff's eligibility for these benefits was redetermined under the rules for determining disability in adults after he attained age 18. On January 15, 2010, it was determined that plaintiff was no longer disabled as of January 1, 2010. *Id*. at 90-93. This

determination was upheld upon reconsideration. *Id*. at 87-89. On January 14, 2011, a hearing was held before administrative law judge ("ALJ") Stanley Hogg. *Id.* at 36-56. Plaintiff was represented by counsel at the hearing, at which he and a third-party witness testified. *Id.*

On June 29, 2011, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A).[1] *Id.* at 19-28. The ALJ made the following specific findings:

1. The claimant attained age 18 on August 9, 2009, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18. The claimant was notified that he was found no longer disabled as of December 2010, based on a redetermination of disability under the rules for adults who file new applications (20 CFR 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2. Since January 1, 2010, the claimant has had the following severe impairment(s): dysthymic and mood disorders (20 CFR 416.920(c)).

3. Since January 1, 2010, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

* * *

4. After careful consideration of the entire record, the undersigned finds that since January 1, 2010, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot perform complex or detailed tasks, and is limited to the performance of unskilled work.

* * *

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 10, 1991 and is a younger individual age 18-49 (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

* * *

9. Since January 1, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

* * *

10. The claimant's disability ended on January 1, 2010, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g).

*Id.* at 21-28.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id*. at 15, and on May 17, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7.

/////

/////

3

1  II.     LEGAL STANDARDS

2       The Commissioner's decision that a claimant is not disabled will be upheld if the findings
3  of fact are supported by substantial evidence in the record and the proper legal standards were
4  applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);
5  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,
6  180 F.3d 1094, 1097 (9th Cir. 1999).

7       The findings of the Commissioner as to any fact, if supported by substantial evidence, are
8  conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is
9  more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th
10 Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a
11 conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.
12 N.L.R.B.*, 305 U.S. 197, 229 (1938)).

13      "The ALJ is responsible for determining credibility, resolving conflicts in medical
14 testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
15 2001) (citations omitted). "Where the evidence is susceptible to more than one rational
16 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
17 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

18 III.    ANALYSIS

19      Plaintiff argues that the ALJ erred by (1) failing to find that his diabetes was a severe
20 impairment at step two, (2) rejecting his testimony without clear and convincing reasons, and (3)
21 not supporting the RFC determination with substantial evidence. Plaintiff further contends that
22 (4) the Appeals Council erred by failing to consider all evidence submitted by plaintiff in his
23 request for review.

24      A. The ALJ's Failure to Find That Plaintiff's Diabetes Was Severe Was Harmless
25      Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by
26 failing to find that his diabetes was a severe impairment. ECF No. 15-1 at 15-19.

27      "The step-two inquiry is a de minimis screening device to dispose of groundless claims."
28 *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants

whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. *Yuckert*, 482 U.S. at 153. At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An ALJ must consider all of the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id*. § 404.1520(a); *Yuckert*, 482 U.S. at 145. "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir.2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

      At step two the ALJ found that plaintiff's only severe impairments were dysthymic and mood disorders. AR 21. In making this finding, the ALJ did not address any evidence concerning plaintiff's diabetes. Indeed, the ALJ's step-two finding contained no discussion of any evidence in the record. *Id*. The Commissioner argues, however, that the medical evidence shows that had plaintiff been compliant with his prescribed treatment his diabetes would have had virtually no impact on his ability to work. ECF No. 18 at 15. Otherwise stated, according to the Commissioner, the only reason that plaintiff's complications from diabetes have any significant effect on plaintiff's work-related functions is plaintiff's repeated failures to follow prescribed treatment and that cannot form basis for finding plaintiff disabled. *See* 20 C.F.R. 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work . . . .") and (b) ("If you do not follow the prescribed treatment plan without a good reasons, we will not find you disabled . . . ."); *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Impairments that can be controlled effectively with medication are not

/////

disabling for the purpose of determining eligibility for SSI benefits."). There is considerable factual support for this argument in the medical records.

Medical records from 2007 and 2008 show that plaintiff was treated for Type One Diabetes Mellitus. AR 267-277. These notes indicate that plaintiff had poor control of his blood sugar, and that he was not compliant in checking his glucose levels and taking his medication. *Id*. In February 2009, plaintiff admitted that he does not check his blood sugars because he was unhappy about having diabetes and that he would rather be doing other activities, including watching television, talking to his girlfriend, and hanging out with friends. *Id*. at 328.

In December 2009, plaintiff underwent an internal medicine evaluation. *Id*. at 337-41. Plaintiff reported that he does not regularly check his blood sugars and had not been compliant with his medication. *Id*. at 337-338. The examining physician found that despite plaintiff's diabetes, he had no limitations in his functional capacity. *Id*. at 341. In February 2010, plaintiff was seen by his primary care physician for complaints of coughing and vomiting. *Id*. at 192. He also reported decreased energy and mild headaches. *Id*. Plaintiff reported that he "does not check his glucose at home at all." *Id*. at 193. He was diagnosed with diabetic ketoacidosis, relatively mild, and did not require intravenous insulin. *Id*. at 196.

In August 2010, plaintiff reported tingling and sharp pain in his legs. *Id*. at 376. His glucose levels were high and he again reported that he was not testing. *Id*. at 375-376. Plaintiff's treating physician stated that plaintiff was "possibly beginning to have peripheral neuropathy." *Id*. at 375. Treatment notes from November 2010 show that plaintiff's glucose control was poor and he continued to generally not test his levels. *Id*. at 374.

Plaintiff was admitted to the hospital on January 8, 2011, with nausea and vomiting, after failing to take his insulin medication. *Id*. at 405-431. "His blood sugar was too high to register." *Id*. at 410. Plaintiff also complained of neuropathy in his lower extremities, but upon examination no abnormal findings were noted. *Id*. at 406-411. Plaintiff also reported depression and was referred to a psychiatrist. *Id*. In January 2011, plaintiff's treating physician stated that plaintiff's glucose control was poor due to noncompliance with testing and poor insulin use. *Id*. at 389.

In February 2011, plaintiff underwent an electrodiagnostic medicine consultation with a nerve conduction study to diagnose or rule out diabetic neuropathy. *Id.* at 176-179. Plaintiff complained of an electric shock sensation from his calves down to his foot bilaterally, that started about three years earlier. *Id.* at 176. The nerve conduction study of the bilateral lower limbs and the right upper limb was abnormal, "suggestive of a sensorimotor peripheral neuropathy with axonal loss and demyelination." *Id.* at 179. The physician conducting the study noted that plaintiff "has insulin-dependent diabetes and his blood sugar has been poorly controlled which can contribute to his peripheral neuropathy." *Id.*

Thus, there is support in the record for the Commissioner's argument that plaintiff has failed to follow prescribed treatment that would have controlled his diabetes to a level where it would not have precluded his ability to work. The question remains however, as to whether it was error to find the diabetes condition a non-severe impairment at step-two.

The ALJ did not explain why the evidence of record failed to show that plaintiff's diabetes was non-severe. The evidence discussed above demonstrates that it was, although for reasons that were within plaintiff's ability to control. Indeed, in assessing plaintiff's RFC at the fourth step, the ALJ summarized the evidence concerning plaintiff's diabetes and concluded that the record contains "objective findings that reflect that [plaintiff's] ability to perform the exertional demands of work is more than minimally impaired" by his diabetes. *Id.* at 22-23. Since he found that plaintiff's diabetes more than minimally impaired plaintiff's ability to work, he conceded that plaintiff's diabetes was a severe impairment under the step-two standard. *See Webb*, 433 F.3d at 686–87 (an impairment is "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.").

Thus, based on his own findings at step four, the ALJ was mistaken in finding plaintiff's diabetes a non-severe impairment as step two. Nevertheless, the error was harmless. The effect of finding an impairment severe at step two is a requirement that the impairment be considered in the remainder of the sequential analysis. The ALJ did just that. He considered and addressed the evidence concerning plaintiff's diabetes in assessing plaintiff's RFC at step-four.

/////

Because the ALJ considered plaintiff's diabetes in assessing plaintiff's RFC, any error in failing to find this impairment severe at step two had no effect on the outcome. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless an ALJ's failure to list certain impairment at step two where ALJ fully evaluated the impairment at step four); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Smolen*, 80 F.3d at 1290 (if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523); *Burch v. Barnhart*, 400 F.3d 676, 682–82 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where it was considered in determining claimant's RFC).

### B.   The ALJ Properly Discredited Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred by failing to set forth clear and convincing reasons for discrediting his subjective complaints and limitations. ECF No. 15-1 at 19-27.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345–47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff testified that due to his diabetes, he experiences fatigue, nausea, vomiting, and headaches. AR 42. He also stated that he experiences numbness and pain in his lower extremities, and that he could only stand for approximately 2 hours due to pain and fatigue in his legs. *Id*. at 42-43, 45. He also stated that he has problems with insomnia and concentration due to his depression. *Id*. at 43.

The ALJ found that plaintiff's statements regarding the extent of his limitations were not fully credible. The ALJ provided two reasons for why plaintiff was not fully credible. First, the ALJ discounted plaintiff's credibility due to his failure to follow his prescribed treatment. AR 26. While it is not entirely clear how the failure to follow treatment here relates to the credibility of plaintiff's descriptions of his condition and resulting limitations in light of the failure, as a general matter an ALJ is permitted to consider an unexplained or inadequate explanation for failing to follow a prescribed course of treatment in assessing credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). But here, plaintiff is not alleging unverifiable pain or other similar symptoms, which if true would normally be evidence by seeking and following treatment to alleviate it. To the contrary, there is compelling evidence that plaintiff's very failure to follow the treatment was resulting in the symptoms for which he complained. As discussed above, the record is replete with evidence showing that plaintiff did not monitor his glucose levels and regularly failed to take his insulin as prescribed. Thus, the issue is less one of credibility as to the symptoms rather than whether it was plaintiff's failure to follow treatment that caused them. While plaintiff does not dispute that he was noncompliant in taking his medication, he contends that his failure to follow this prescribed course of treatment is adequately explained by his depression. ECF No. 15-1 at 22-23.

The ALJ addressed this argument in his decision. He found that although plaintiff had been diagnosed with a dysthymic disorder, the record showed that plaintiff's symptoms did not interfere with his ability to perform activities of daily living. AR 26. One would infer from that

1  finding that plaintiff should have been capable of checking his glucose and taking his insulin.
2  Plaintiff reported that when he gets up in the morning he gets his shot, eats breakfast, takes his
3  medication for depression, visits with friends, and has lunch. *Id*. at 151. Plaintiff also did not
4  report needing any assistance with his personal care. *Id*. at 152. The ALJ was permitted to infer
5  that plaintiff's ability to care for himself notwithstanding his depression contradicted his claim
6  that his depression justified his failure to monitor his glucose levels and take his medication as
7  prescribed. *See Marci v. Charter*, 93 F.3d 540, 543 (9th Cir. 1996) ("[T]he ALJ is entitled to
8  draw inferences logically flowing from the evidence.") (quotations omitted). Accordingly,
9  plaintiff's failure to follow his prescribed course of treatment was an adequate reason for not
10 basing disability on symptoms resulting from that failure, including the symptoms described by
11 plaintiff in his testimony.
12     The ALJ also discounted plaintiff's testimony based on his finding that plaintiff's
13 allegations were not supported by objective evidence. AR 25. The ALJ provided the following
14 discussion:

> Despite the claimant's allegation of severe symptoms, include headaches, foot pain, and fatigue, and related limitations, the record does not contain any objective findings that support the severity of the claimant's allegation. In fact, examinations have generally been described as benign, and have not reflected any sensory or reflex abnormalities, or motor strength weakness over the lower extremities. In addition, the record does not contain any electo-diagnostic testing of the lower extremities that displayed any irregular finding. Moreover, the claimant has not displayed any evidence of significant disorganization of motor function in any extremity, and no physician has noted any ambulatory difficulty. Although a physician noted that the claimant is "possibly beginning to have peripheral neuropathy," examination did not produce any collaborating findings.

23 AR 25.
24     Contrary to the ALJ's finding, the record shows that in February 2011, plaintiff underwent
25 electrodiagnositic testing with a nerve conduction study, which showed abnormal results for the
26 bilateral lower limbs and the right upper limb. *Id*. at 176-179. The physician conducting the
27 testing stated that results suggested sensorimotor peripheral neuropathy. *Id*. at 179. The ALJ's
28 decision does not mention this evidence. However, it appears that this evidence was not before

1 him. The record indicates that the results of the EMG testing were submitted to the ALJ by
2 plaintiff's counsel on March 15, 2011, well before he issued his June 20, 2011 decision. AR 180-
3 183. However, a letter to the Appeals Council dated April 20, 2012, indicates that the EMG test
4 results were never admitted into the record. *Id*. at 191. It is unclear from this precisely why.
5 Regardless, the court finds that consideration of the EMG testing does undermine the ALJ's
6 findings.

7 As observed by the ALJ, other examinations have generally been described as benign, and
8 have not reflected sensory or reflex abnormalities, or motor strength weakness. A December 20,
9 2009 examination showed that motor strength was 5/5 and range of motion was normal. *Id*. at
10 337-341. Plaintiff's reflexes and sensation were also normal. In January 2011, plaintiff
11 complained of neuropathy in his lower extremities, but examination found no abnormal findings.
12 *Id*. at 406-411. While there are complaints of pain in plaintiff's leg, there are no objective
13 findings showing impairment to plaintiff's lower extremities. *Id*. at 376. Thus, aside from the
14 EMG testing results, there is essentially no objective medical evidence supporting plaintiff's
15 allegations of pain.

16 Furthermore, the ALJ noted that it was "significant" that plaintiff "consistently failed to
17 follow his prescribed treatment," AR 26, which was a clear and convincing reason for
18 discrediting plaintiff's subjective statements. Accordingly, the court finds that any failure to
19 account for the EMG testing was harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 545 F.3d
20 1050, 1055 (9th Cir. 2006) (holding that a court may affirm an ALJ's decision "under the rubric
21 of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's
22 ultimate disability conclusion.").

23 Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for
24 discounting the testimony of his mother, Denise Irish. ECF No. 15-1 at 26. Ms. Irish testified
25 that plaintiff is often in his bed because he is tired, but noted that he occasionally goes out with
26 friends. AR 52-53. She also stated that he experiences severe depression. *Id*. at 54. She
27 confirmed that he is not compliant in testing his blood sugars or taking his medication, but was
28 unable to provide an explanation for his noncompliance. *Id*. at 53-54. In a third-party functional

1  report, she stated that plaintiff mostly plays computer games, visits with friend, takes shots, eats,
2  and occasionally walks to a nearby store. *Id*. at 159. She also stated that his condition has been
3  getting better as he ages, although she reported that his condition affects his ability to walk, see,
4  and concentrate. *Id*. at 163-164.

5  The ALJ first noted that there was no objective finding or diagnostic testing reflecting that
6  plaintiff's ability to perform exertional demands was more than minimally impaired. AR 26. As
7  discussed, while an EMG test showed abnormal findings, other examinations have found no
8  physical limitations. The lack of corroborating evidence is a germane reason for rejecting Ms.
9  Irish's statements. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency
10 with medical evidence" is a germane reason). The ALJ also notes that plaintiff's mother did not
11 report that her son had significant limitations. AR 26. However, the ALJ does not cite to any
12 evidence in making this argument and therefore it is unclear precisely what evidence he relies on
13 for this reason. Accordingly, the court cannot determine whether this reason is supported by
14 substantial evidence. Lastly, the ALJ noted that the plaintiff's mother has a financial interest in
15 plaintiff's disability claim, as she charges him monthly rent. *Id*. The Ninth Circuit has held that
16 "evidence that a specific spouse exaggerated a claimant's symptoms *in order* to get access to his
17 disability benefits, as opposed to being an 'interested party' in the abstract, *might suffice* to reject
18 that spouse's testimony." *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 694 (9th Cir.
19 2009). There is no direct evidence that plaintiff's mother is exaggerating plaintiff's symptoms to
20 gain access to his benefits. Although she charges rent, she is more akin to an "interested party in
21 the abstract." Accordingly, this last reason is not germane.

22 However, because the ALJ gave at least one germane reason, the court finds that any
23 reliance in the other two reasons is harmless.

24 C. <u>The ALJ Properly Assessed Plaintiff's RFC</u>.

25 Plaintiff contends that the ALJ's RFC determination is not supported by substantial
26 evidence. The ALJ found that plaintiff retained the RFC to perform the full range of work at all
27 exertional levels but was limited to unskilled work. AR 22. Plaintiff contends that the ALJ erred
28 in assessing both his physical and mental limitations.

i. Physical Impairments

In assessing plaintiff's physical impairments, the ALJ observed that the "[t]he record does not show that the claimant's ability to perform physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling is significantly limited. In addition, no physician has suggested that the claimant experiences any work-related limitation." AR 27.

As discussed above, plaintiff underwent a comprehensive internal medicine evaluation in December 2009. The examination did not reflect any significant objective findings. Range of motion in plaintiff's extremities was normal, with muscle strength at 5/5. *Id*. at 340. Gait was within normal limits, and sensation and reflexes were normal. *Id*. Vision was also grossly within normal limits. *Id*. at 341. Based on the examination, Dr. Siciarz opined that plaintiff did not have any physical limitations. *Id*. at 341. Dr. Siciarz's evaluation and opinion constitute substantial evidence supporting the ALJ's decision that plaintiff did not have any physical limitations.

Plaintiff contends, however, that Dr. Siciarz's opinion does not constitute substantial evidence because he did not have the opportunity to review the EMG tests, which showed neurological abnormalities. It is true that the EMG testing was performed in February 15, 2011, and therefore such information was not available to Dr. Siciarz. However, at the time plaintiff underwent the EMG testing, plaintiff reported that he experienced shock sensations from his calves down to his feet, which started about 3 years before. Accordingly, when plaintiff was examined by Dr. Siciarz, he was already experiencing symptoms consistent with neuropathy. Notwithstanding plaintiff's complaints of pain, examination showed that plaintiff did not have any physical limitations. Accordingly, the fact that Dr. Siciarz did not have the chance to review the EMG test results does not undermine his opinion, which was based off his own objective findings.

Plaintiff also contends that the ALJ erred in relying on Dr. Siciarz's opinion because he did not have a chance to review plaintiff's school records from April 2007 and April 2008, which noted that plaintiff was having "fine motor control problems affecting his writing manually." ECF No. 15-1 at 30; *see* AR 287, 304. First, the school records do not constitute medical

1    objective findings.  They are simply observations from individuals that worked at plaintiff's
2    school.  Further, Dr. Siciarz examined plaintiff and specifically found that plaintiff's fine motor
3    skills were within normal limits.  *Id*. at 340.

4          Plaintiff also claims that the ALJ's RFC determination is not supported by substantial
5    evidence because the ALJ did not consider a February 2011 ophthalmology test, which shows he
6    complained of blurry vision and that he was diagnosed with "Type 1 DM with eye path" and non-
7    proliferative diabetic retinopathy.  AR 437.  However, the report also shows that plaintiff vision
8    was 20/20.  *Id*. at 435.  Accordingly, this evidence also does not undermine the ALJ's RFC
9    determination.  Furthermore a March 23, 2010 note from Dr. Charles Richard, an optometrist,
10   stated that plaintiff's vision was 20/20, eye coordination and ocular health was normal.  AR 223.
11   Dr. Richard's opined that plaintiff should have no difficulty doing any visually related tasks.  *Id*.
12   This evidence is also consistent with the ALJ's finding that plaintiff did not have any visual
13   impairments.

14         Plaintiff also argues, however, that in light of the school records, the ophthalmology test,
15   and the EMG test, the ALJ had, at the very least, a duty to further develop the record.  However,
16   the duty to develop the record is "triggered only when there is ambiguous evidence or when the
17   record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276
18   F.3d 453, 459–60 (9th Cir. 2001).  "Ambiguous evidence, or the ALJ's own finding that the
19   record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to
20   conduct an appropriate inquiry."  *Tonapetyan v. Halter*, 242 F.3d at 1150.  "A specific finding of
21   ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the
22   record establishes ambiguity or inadequacy."  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir.
23   2011).

24         Here, the record was not ambiguous or inadequate.  While the EMG test results showed
25   abnormal findings consistent with sensorimotor peripheral neuropathy, *id*. at 179, the record also
26   showed that plaintiff did not exhibit any physical limitations, *id*. at 341.  Despite plaintiff's school
27   records, objective medical evidence shows that plaintiff did not have any limitations in fine
28   manipulation.  Furthermore, while plaintiff did report blurry vision, the record shows that he does

14

not have any visual impairment. Accordingly, the record contains substantial evidence supporting the ALJ's finding that plaintiff does not have any physical limitations.

### ii. Mental Impairments

In assessing plaintiff's mental limitations, the ALJ found that "the evidence of record suggests that [plaintiff] would have difficulty performing skilled or detailed tasks, and therefore, he should be limited to the performance of unskilled work. This conclusion is supported by the only comprehensive mental status evaluation of record, and is consistent with the claimant's report of daily activities." AR 27.

On December 29, 2009, plaintiff underwent a psychological evaluation, completed by Joe Azevedo, Ph.D. AR 342-347. Dr. Azevedo diagnosed plaintiff with dysthymic disorder. *Id*. at 346. He opined that plaintiff could understand, remember, and carry out one and two step instructions of moderate levels of complexity, and could make judgments on simple-work related decisions. *Id*. He further opined that plaintiff had mild limitations in maintaining concentration, persistence, and pace; managing work pressure and responding to change; and at least mild limitations in interacting appropriately with supervisors, co-workers, and the general public. *Id*.

The record contains a Psychiatric Review Technique form completed by Adrianne Gallucci, Psy.D. AR 348-358. Ms. Gallucci opined that plaintiff had only mild limitations in his daily activities; and maintaining social functioning; maintaining concentration, persistence, or pace. *Id*. at 358.

The record also contains a Mental Residual Functional Capacity Assessment completed by Dr. Billie Harman. *Id*. at 237-239. Dr. Harman found that plaintiff had moderate limitations in his ability to carry out detailed instructions; maintain attention and concentration and pace for extended period of time, interact with the public, and respond appropriately to changes in the work setting. *Id*. at 237-239. He clarified that plaintiff could attend work on a regular basis, although he had mild impairment in completing a regular workday/week and keeping a consistent pace. He further stated that plaintiff would have some difficultly working with the public, but no other social limitations. He also opined that plaintiff would have moderate impairments dealing with the pressure/stresses of a competitive work environment. However, Dr. Harman ultimately

1  concluded that plaintiff retained the ability to perform simple, repetitive tasks in a low
2  pressure/stress environment. *Id*. at 239.

3  In assessing plaintiff's RFC, the ALJ found that plaintiff had that plaintiff was able to
4  perform unskilled detailed tasks. This finding is generally consistent with the medical opinions
5  assessing plaintiff's mental functional capacity. As noted above, Dr. Azevedo found that
6  plaintiff's limitations were no more than mild, and the ALJ specifically observed that this was the
7  only opinion of record from an examining source. Ms. Gallucci also found that plaintiff only had
8  mild limitation. While Dr. Harman did assess moderate limitations, he nevertheless found that
9  plaintiff could perform simple repetitive tasks, which is consistent with unskilled work.

10  The ALJ's finding limiting plaintiff to unskilled work adequately incorporated these
11  physicians' opinions. *See* 20 C.F.R. § 416.968 (defining unskilled work as "work which needs
12  little or no judgment to do simple duties that can be learned on the job in a short period of time.");
13  *Keller v. Colvin*, 2014 WL 130493, * 3 (E.D. Cal. Jan. 14, 2014) (finding that RFC limiting
14  plaintiff to unskilled work captured opinion limiting plaintiff to, among other things, simple tasks
15  in low-stress setting).

16  Accordingly, the ALJ's RFC determination is supported by substantial evidence.

17  D.  <u>The Appeals Council Did Not Err in Failing to Consider Additional Evidence
18  Submitted by Plaintiff</u>

19  Plaintiff also contends that the Appeals Council erred by failing to consider evidence he
20  submitted in support of his request for review. ECF No. 15-1 at 31-33. Specifically, plaintiff
21  claims that he submitted to the Appeals Council medical records from February 2012 that showed
22  that he was treated for suicidal ideation. *Id*. at 32. Plaintiff contends that this evidence is material
23  to his argument that his depression interfered with his ability to take his diabetes medication. *Id*.
24  at 33.

25  The Commissioner's regulation provide that the Appeals Council will consider "any new
26  and material evidence only if it relates to the period on or before the date of the administrative
27  law judge hearing decision." 20 C.F.R § 416.1476(b). The ALJ issued his decision on June 29,
28  /////

2011. Based on plaintiff's statements that the medical evidence is from February 2012, after the ALJ's decision, the Appeals Council properly rejected this evidence.

IV.     CONCLUSION

The ALJ applied the correct legal standard and supported his decision with substantial evidence. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 30, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE